01
02
03
04
05

06                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
07                              AT SEATTLE

08  SHERRIE LYNN BAKER,                )
                                       )   CASE NO. C12-1278-JLR-MAT
09           Plaintiff,                )
                                       )
10      v.                             )   REPORT AND RECOMMENDATION
                                       )
11  CAROLYN W. COLVIN, Acting          )
    Commissioner of Social Security,[1])
12                                     )
             Defendant.                )
13  _____)

14      Plaintiff appeals the final decision of the Commissioner of the Social Security

15  Administration ("Commissioner") which denied her application for Social Security Income

16  ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-83f, after a hearing before

17  an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's

18  decision is REVERSED and REMANDED for further administrative proceedings.

19  / / /

20  _____

21      1 On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.
    Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for
22  Commissioner Michael J. Astrue as the defendant in this suit. **The Clerk is directed to update the docket
    accordingly, and the parties are ordered to update the caption on all future filings with the court**.

REPORT AND RECOMMENDATION
PAGE - 1

# I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1986 and was 22 years old on the date her application was filed. (Administrative Record ("AR") 140.)  She has a high school education and previously worked as a telemarketer and sales clerk.  (AR 21.)  On March 26, 2009, she filed an application for SSI, alleging disability beginning August 1, 2008.  (AR 12, 140-47.)

The Commissioner denied plaintiff's applications initially and on reconsideration. (AR 84-87, 90-92.)  She requested a hearing which took place on May 17, 2010.  (AR 33-78.) On June 11, 2010, the ALJ issued a decision finding plaintiff not disabled.  (AR 12-22.)  The Appeals Council denied plaintiff's request for review (AR 1-5), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On July 26, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. No. 1.)

# II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

# III. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant has engaged in substantial gainful activity.  The ALJ found plaintiff had not engaged in substantial gainful activity since the application date.  (AR 14.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found plaintiff's depression, recurrent; acute stress disorder; posttraumatic stress

disorder ("PTSD"); drug and alcohol abuse; obesity; and asthma severe. *Id*. Step three asks whether the claimant's impairments meet or equal the criteria of a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 15.) If the claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

> less than a full range of medium work. This individual can lift up to 50 lbs. occasionally, and lift and/or carry 25 lbs. frequently, with no restrictions for standing, walking, and sitting with normal breaks. This individual can do unlimited pushing and pulling except for the lift and/or carry limitation stated above. She should avoid concentrated exposure to fumes, odors and gases. This individual can perform simple, routine tasks and follow short, simple instructions. This individual can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. This individual has average ability to perform sustained work activities (i.e. can maintain attention and concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence. This individual can have occasional interactions with co-workers and supervisors and can work in close proximity to co-workers but not in a cooperative or team effort. This individual can respond appropriately to supervision, co-workers and work situations, and can deal with occasional work setting changes. This individual will not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact with the general public is not precluded.

(AR 17.) With that assessment, the ALJ found plaintiff unable to perform any past relevant work. (AR 21.)

If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the

claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. Based on the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (AR 21.) The ALJ concluded plaintiff has not been under a disability since the date the application was filed. (AR 22.)

Plaintiff argues that the ALJ failed to properly consider the opinions of Kees C. Hofman, Ph.D., Jeffrey Nelson, M.D., and the state agency consultants; failed to properly consider all of the severe mental impairments, failed to properly consider whether her impairments met or equaled a listing, and failed to properly assess her mental RFC and credibility. (Dkt. No. 16.) She requests remand for an award of benefits or, in the alternative, further administrative proceedings. *Id*. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 20.)

### Medical Opinion Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th

Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id.*

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96–6p. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632–33.

Plaintiff argues that the ALJ failed to give legally sufficient reasons for disregarding the opinions of examining psychologist Kees C. Hofman, Ph.D., and treating psychiatrist Jeffrey

Nelson, M.D. Plaintiff also contends the ALJ erred in giving greater weight to the opinions of the non-examining state agency medical consultants than to the opinions of the examining and treating doctors. (Dkt. No. 16 at 5-18.)

A.   Kees C. Hofman, Ph.D.

On October 25, 2008, examining psychologist Kees C. Hofman, Ph.D., performed a psychological evaluation of the plaintiff for the Washington State Department of Social and Health Services ("DSHS"). (AR 409-14.) Dr. Hofman found plaintiff had no limitations in any of the five cognitive factors evaluated, but opined that plaintiff had marked to severe limitations in several social factors, including her ability to relate appropriately to coworkers and supervisors, to interact appropriately in public contacts, to respond appropriately to and tolerate the pressures and expectations of her normal work setting, and to control physical or motor movements and maintain appropriate behavior. (AR 411.) As the basis for this opinion, Dr. Hofman noted plaintiff easily takes offense, struggles with impulses to harm herself, and is unable to maintain employment. *Id*. Dr. Hofman diagnosed plaintiff with acute stress disorder, PTSD, and depression, recurrent, noting that her score on the Beck Depression Inventory was in the severe range. (AR 410, 412.) Dr. Hofman also noted that mental health treatment would likely restore or substantially improve plaintiff's ability to work, but that she was not currently receiving mental health services. (AR 412.) Dr. Hofman indicated that plaintiff would be impaired to the degree indicated for a minimum of one year, and that she has "difficulty accessing treating." *Id*.

The ALJ found Dr. Hofman's opinions should be given "some weight, but only to the extent consistent with the medical record." (AR 18.) The ALJ noted that Dr. Hofman

REPORT AND RECOMMENDATION
PAGE - 6

indicated plaintiff was "unable to maintain employment," but discounted this opinion asserting that Dr. Hofman "also wrote that the claimant was not cooperating with treatment plan, and that treatment would 'likely to restore or substantially improve' her ability to work for pay in a regular and predictable manner." *Id*. The ALJ's RFC assessment limited plaintiff to incidental contact with the general public. (AR 17.) However, the ALJ disregarded Dr. Hofman's other social limitations, finding that plaintiff can respond appropriately to supervision and co-workers, and can work in close proximity to coworkers, as long as she does not have to work in cooperation with them. *Id*. The ALJ included no limitations in plaintiff's ability to control physical or motor movements and maintain appropriate behavior.

Plaintiff argues that the ALJ erred by failing to either incorporate the limitations found by Dr. Hofman into the RFC assessment, or give legally sufficient reasons for rejecting Dr. Hofman's opinions. (Dkt. No. 16 at 7.) Plaintiff contends that although the ALJ indicated that he did not believe Dr. Hofman's opinion was consistent with other medical evidence of record, the ALJ did not actually identify any specific evidence that contradicted Dr. Hofman's opinions. Plaintiff also argues that although the ALJ asserted that Dr. Hofman wrote plaintiff was not cooperating with a treatment plan, Dr. Hofman never made that statement. Rather, Dr. Hofman indicated that plaintiff was not eligible to receive treatment from his agency, and that plaintiff was not "currently" receiving mental health services. (Dkt. No. 16 at 8 (citing AR at 412).)

The Court agrees with plaintiff that the ALJ erred by failing to give legally sufficient reasons for rejecting Dr. Hofman's opinion. Although the ALJ apparently believed Dr. Hofman's opinions were inconsistent with the medical record, he failed to identify any specific

evidence that contradicted Dr. Hofman's opinions. As indicated above, when an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctor, are correct. *See, e.g.*, *Reddick*, 157 F.3d at 725. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Soc. Sec. Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999).

The Commissioner argues that "the RFC assessment reflects Dr. Hofman's limitations when viewed in light of Plaintiff's activities of daily living and other medical evidence, which were also relied upon by the ALJ." (Dkt. No. 20 at 12-14.) The Commissioner then identifies conflicting activities and medical opinions from the state agency consultants, Leslie Postovoit, Ph.D., and William Lysak, Ph.D. The problem with this argument, however, is that the ALJ did not provide these reasons. The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995). As pointed out by plaintiff, the ALJ did not reject Dr. Hofman's opinion on the basis that it was contradicted by plaintiff's daily activities and the opinions of Drs. Postovoit and Lysak. As such, neither can this Court.

The Commissioner further argues that the ALJ properly rejected Dr. Hofman's opinion that plaintiff was "unable to maintain employment," because plaintiff was not taking psychiatric medication or in mental health treatment at the time she saw Dr. Hofman – and Dr. Hofman indicated that mental health treatment would likely restore or substantially improve plaintiff's ability to work. (Dkt. No. 20 at 13 (citing 20 C.F.R. § 416.930(a) (stating that a claimant must follow prescribed treatment if treatment will restore the claimant's ability to

work).)  The Commissioner contends that the ALJ thus reasonably inferred that plaintiff was not cooperating with a treatment plan.  *Id*. at 13-14.

Again, plaintiff argues, correctly, that these are post hoc rationales which the ALJ himself did not provide as reasons for not adopting the limitations found by Dr. Hofman.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").  Furthermore, contrary to the Commissioner's assertion, the ALJ did not reasonably infer that plaintiff was not cooperating with a treatment plan.  Rather, the ALJ incorrectly stated that Dr. Hofman "*wrote that the [plaintiff] was not cooperating with treatment plan.*"  (AR 18 (emphasis added).)  Dr. Hofman, however, never made that statement.  Rather, Dr. Hofman stated that plaintiff was not eligible to receive treatment from his agency, and that she was not "currently receiving mental health services," but "wants [treatment]."  (AR at 412.)  The Commissioner's argument that plaintiff was not compliant with a mental health treatment plan is not supported by the record as there was no mental health treatment plan in place at the time plaintiff saw Dr. Hofman.  In sum, the ALJ's evaluation of Dr. Hofman's evaluation is not supported by substantial evidence and is erroneous.

B.    Jeffrey Nelson, M.D.

On May 5, 2010, treating psychiatrist Jeffrey Nelson, M.D., opined in written interrogatory questions prepared by plaintiff's attorney that plaintiff's impairments met the criteria for Listing 12.06 (anxiety-related disorders) and Listing 12.04 (affective disorders).  (AR 485-90.)  Specifically, Dr. Nelson check marked boxes indicating that plaintiff had marked restriction of activities of daily living; marked difficulties maintaining social

functioning; and marked deficiencies of concentration, persistence or pace. (AR 486, 489.) Dr. Nelson noted that he based his conclusions on "[h]istory, mental status exam and observation." (AR 487, 490.) In addition, Dr. Nelson opined that plaintiff's ADHD caused marked inattention; marked impairment in age-appropriate cognitive-communicative functioning; and marked deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner. (AR 491.)

The ALJ considered Dr. Nelson's opinions but assigned them little weight for several reasons. (AR 19.) First, the ALJ found plaintiff's "own testimony and reported [activities of daily living] do not support Dr. Nelson's assessment." *Id.* Although Dr. Nelson opined that plaintiff had marked restrictions in activities of daily living, the ALJ found that plaintiff had only mild difficulties in this area. (AR 16, 19-20.) The ALJ noted plaintiff reported no difficulties completing personal care and preparing meals for herself on a daily basis. (AR 16, 19, 218-19, 232-33, 283-84.) Plaintiff also reported that she takes care of pets and performs household chores. *Id.* Plaintiff also testified that she "couch surfs" between her boyfriend's house and her parents' house, and that when she stays with her parents she gets up early and cleans their house in exchange for rent. (AR 20, 40, 282.)

Dr. Nelson also opined that plaintiff had marked difficulties maintaining social functioning, but the ALJ found plaintiff had only moderate difficulties in this area. (AR 16, 19-20.) The ALJ noted plaintiff "testified to having a network of friends with whom she maintains contact regularly, including going to the movies and sitting at the beach with them; she goes on picnics with her boyfriend; she testified to using the computer to access the social networking site Facebook; and although she tries to avoid crowds because of alleged anxiety,

01 this condition does not stop her from doing grocery shopping or going to the movies." (AR 19,
02 20.)

03 Dr. Nelson also opined that plaintiff had marked deficiencies in concentration, persistence, and pace, however, the ALJ found that plaintiff had only mild limitations in this area. (AR 16, 18-19.) The ALJ noted that plaintiff dropped out of high school, but had enough persistence to complete her GED through job corps and look for employment. (AR 18-19, 38-39.) The ALJ also noted that plaintiff engaged in vocational rehabilitation, including taking career aptitude tests and researching careers in microbiology and technical writing. (AR 19, 41.) The ALJ further found plaintiff retains enough attention and concentration to play the online game "mobsters." (AR 20, 41.)

The ALJ was permitted to discount Dr. Nelson's opinions because they were inconsistent with plaintiff's own testimony as well as her reported activities of daily living. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding the ALJ's finding that the treating doctor's "restrictions appeared to be inconsistent with the level of activity that [plaintiff] engaged in by maintaining a household and raising two young children," was a specific and legitimate reason for discounting the opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (finding the ALJ permissibly rejected treating physician's opinion that conflicted with plaintiff's daily activities); *see also Fisher v. Astrue*, 429 Fed. App'x 649, *652, 2011 WL 1575449 (9th Cir. 2011) (finding inconsistencies between doctor's opinions and plaintiff's activities were specific and legitimate reasons to discount the doctor's opinion). Plaintiff objects to the ALJ's reliance on some of her statements, arguing that a significant portion of her statements of activities were from a 2006 disability function

report, which was more than three years before her current alleged onset date. Although some of the activities the ALJ cited were from a 2006 function report, plaintiff made the same or substantially similar statements in her March 2009 and August 2009 function reports as well as in her testimony at the hearing. *Compare* AR 218-19 *with* AR 38-41, 232-33, 282-84. The ALJ did not err in relying, in part, on her 2006 statements.

Second, the ALJ rejected Dr. Nelson's opinion that plaintiff has recurrent severe panic attacks, stating that treatment records do not support allegations that she has panic attacks that are either recurrent or severe. (AR 19.) The ALJ noted that Dr. Nelson based his opinion on a mental status examination, however, the ALJ found "no indication that Dr. Nelson performed any status exam, and the claimant's score at a mental status exam performed by Dr. Hofman on October 25, 2008, was 29 out of 30, a high score that does not justify Dr. Nelson's low functional assessment." *Id*. The ALJ also noted that plaintiff testified to having panic attacks that last only 20-30 minutes. *Id*.

Plaintiff argues, and the Court agrees, that the ALJ failed to give any legitimate rationale for rejecting Dr. Nelson's opinions that plaintiff suffers from recurrent severe panic attacks or a panic disorder. Contrary to the ALJ's assertion, Dr. Nelson's treatment records show that he diagnosed plaintiff with panic disorder and prescribed medication to help treat her panic attacks. (AR 437, 450, 451, 516, 529, 535, 546, 547, 554, 555.) In addition, Dr. Nelson performed at least seven mental status examinations and documented his observations and diagnoses. (AR 450-51, 455, 515-16, 528-29, 534-35, 546-47, 554-55.) Furthermore, the fact that plaintiff testified that she has panic attacks once a week that last for 20 to 30 minutes does not conflict with Dr. Nelson's opinion that plaintiff has recurrent, severe panic attacks.

(AR 54.)

The Commissioner concedes that the ALJ was mistaken when he stated that Dr. Nelson had not performed any mental status examinations. (Dkt. No. 20 at 17.) However, the Commissioner argues that any error is harmless because plaintiff did not meet her burden of showing that the ALJ's error prejudiced her, asserting that "Dr. Nelson's mental status examinations only described a person without disability." *Id*. at 17-18. The Commissioner contends that Dr. Nelson's mental status examinations "are consistent with Dr. Hofman's mental status examination, which the ALJ found conflicted with Dr. Nelson's interrogatory opinions." *Id*. at 17-18. Although the Commissioner offers several reasons that could justify the ALJ's decision to reject Dr. Nelson's opinion, the fact remains these were not the reasons cited by the ALJ. The Commissioner's post hoc rationalizations, even if correct, cannot cure the ALJ's error. *Bray*, 554 F.3d at 1225 (counsel's post hoc rationalizations are not substituted for the reasons supplied by the ALJ).

The Commissioner also contends that the ALJ accounted for plaintiff's panic attacks by finding these attacks were consistent with plaintiff's severe acute stress disorder and by limiting plaintiff to occasional contact with coworkers and incidental contact with the public in his RFC assessment. (Dkt. No. 20 at 19.) The Commissioner's argument is unpersuasive. The ALJ clearly did not believe Dr. Nelson's opinion that plaintiff suffered from recurrent severe panic attacks, yet, as indicated above, the ALJ failed to provide specific and legitimate reasons for disregarding Dr. Nelson's diagnosis of panic disorder. (AR 19.) The Court is not permitted to accept the Commissioner's post hoc rationalization in this regard.

In sum, the ALJ erred by failing to provide specific and legitimate reasons for rejecting

Dr. Nelson's opinion that plaintiff suffers from a severe panic disorder. In addition, the ALJ provided no reasons for disregarding Dr. Nelson's opinion that plaintiff suffers from ADHD. (AR 451, 455, 491, 516, 529, 535, 547, 555.) These errors are not harmless because the ALJ failed to consider these impairments in combination with her other impairments at steps two and three, as well as at subsequent steps in the sequential evaluation process. Thus, remand is warranted for the ALJ to properly consider Dr. Nelson's opinions regarding the severity of plaintiff's panic disorder and ADHD on her functioning.

C. State Agency Physicians

Plaintiff also argues that the ALJ erred in giving greater weight to the opinions of the unidentified, nonexamining state agency consultants than to the treating and examining doctors in this case. (Dkt. No. 16 at 14-18.) "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). As discussed above, because the ALJ did not properly evaluate the opinions of Dr. Hofman and Dr. Nelson, the Court concludes that the ALJ did not set forth specific, legitimate reasons that are supported by substantial evidence in the record for his decision to give greater weight to the opinions of the nonexamining state agency consultants, while giving less weight to the opinions of examining psychologist Dr. Hofman and treating psychiatrist Dr. Nelson. On remand, the ALJ must reevaluate the opinions of the state agency consultants along with the opinions of Dr. Hofman and Dr. Nelson.

Plaintiff also argues that the ALJ erred in failing to address the opinion of state agency

psychologist Faulder Colby, Ph.D., who completed a Certification for Medicaid on December 5, 2008. (Dkt. No. 16 at 8, 17-18.) Dr. Colby wrote: "Dr. Hofman's Oct. '08 evaluation noted chronic depression and stress disorders. Cognition intact. Approve GAX under SSA 12.04, Affective Disorders." (AR 483.) Plaintiff contends Dr. Colby's decision supports a finding that she meets the criteria for Listing 12.04 for affective disorders. (Dkt. No. 16 at 17-18.) The Commissioner argues that any error in failing to address Dr. Colby's opinion was harmless because Dr. Colby's opinion was vague and was based entirely on his review of Dr. Hofman's evaluation, which was granted only "some weight" by the ALJ. (Dkt. No. 20 at 15.) Because the ALJ failed to consider Dr. Colby's opinion, and because the ALJ erred in discounting Dr. Hofman's opinion, on remand the ALJ should also discuss Dr. Colby's opinion and explain the weight given to it. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ "may not reject 'significant probative evidence' without explanation.")).

### Steps Two and Three

Plaintiff argues that the ALJ failed to properly consider all of her severe mental impairments at step two and when he assessed plaintiff's functional limitations at step three. In light of the fact that the ALJ must reevaluate the opinions of Dr. Hofman, Dr. Nelson, Dr. Colby, and the state agency doctors on remand, it is unnecessary to determine whether the ALJ also erred in evaluating the doctors' diagnoses of mental disorders at step two, as alleged by the plaintiff. However, on remand, the ALJ is directed to apply the "special technique" at steps two and three, and discuss all colorable mental impairments. *See* 20 C.F.R. § 416.920a. For example, the ALJ should discuss whether Dr. Nelson's diagnoses of panic disorder and ADHD,

constitute colorable mental impairments, and if so, evaluate them in compliance with the applicable regulations.

### Credibility

Plaintiff argues that the ALJ improperly evaluated her testimony about her symptoms and limitations. (Dkt. No. 16 at 21.) The ALJ's credibility determination rested in large part on his assessment of the medical evidence. The credibility of plaintiff's testimony should thus be re-examined on remand, along with the ALJ's evaluation of the medical evidence regarding plaintiff's psychological limitations.

### Steps Four and Five

As discussed above, the Court has found that the ALJ erred in evaluating the medical evidence, and that these errors also undermined the ALJ's credibility assessment. Following remand, the ALJ should reevaluate the medical evidence and plaintiff's credibility, determine plaintiff's RFC, and obtain vocational expert testimony at step five, if appropriate. Because this case must be remanded based upon the issues discussed above, it is unnecessary to reach plaintiff's other assignments of error.

### Remand

The Court has discretion to remand for further proceedings or to award benefits. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further administrative proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). Or the Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F. 3d 1072, 1076 (9th Cir. 2002) (citing

01 *Smolen*, 80 F.3d at 1292). This occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

Where the ALJ fails to provide adequate reasons for rejecting a treating or examining physician's opinion, the Court may credit that opinion as a matter of law and remand for an award of benefits. *See Lester*, 81 F.3d at 834. However, courts retain flexibility in applying the credit as true theory. *Id*. Where it is not clear from the record that the ALJ would be required to award benefits if the evidence were credited, the Court may remand for further determinations. *Id*. Here, it is not clear from the record that the ALJ would be required to find plaintiff disabled if the evidence described herein was properly considered.

Plaintiff argues that while Dr. Hofman opined that mental health intervention would likely restore or substantially improve plaintiff's ability to work, he nevertheless opined that she would be unable to maintain employment for a minimum of one year – even if she were to receive treatment. (Dkt. No. 16 at 8 (citing AR 411-12).) Plaintiff asserts that Dr. Hofman's opinion thus establishes that she is disabled for a closed period of at least one year, from October 2008 to October 2009.

In this case, it is clear Dr. Hofman believes that unless plaintiff's mental symptoms are reduced she is unable to work. (AR 411-12.) But it is unclear whether Dr. Hofman believes plaintiff would remain impaired to the degree he assessed even if she were to receive treatment. The doctor suggests that mental health treatment would likely restore plaintiff's ability to work.

Plaintiff's records show that she began mental health treatment after Dr. Hofman rendered his October 2008 opinions.  (AR 415-18, 421, 437-55, 512-82.)  Based on this record, the Court cannot say Dr. Hofman's opinions establish as a matter of law that plaintiff would be disabled for a closed period of at least one year from October 2008 to October 2009.  The Court thus concludes it would be appropriate to remand the case for further administrative proceedings.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.  On remand, the ALJ should (1) reevaluate the medical evidence, including the opinions of Dr. Hofman, Dr. Nelson, Dr. Colby, and the state agency doctors; (2) develop the medical record as necessary; (3) reassess steps two and three of the sequential evaluation process; (4) reevaluate plaintiff's credibility; (5) reassess plaintiff's RFC; and (6) reassess steps four and five of the sequential evaluation process with the assistance of a vocational expert.

DATED this <u>24th</u> day of April, 2013.

Mary Alice Theiler
United States Magistrate Judge